AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of Maryland

FILED
JAN 1 8 2018
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| ILEANA SERDARU | ) | Case No. 18-0109SAG |
| | ) | |
| Defendant(s) | ) | MAG 18    021 |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __June 2016__ in the county of _____ in the District of __Maryland__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C § 1029(a)(1) | Access Device Fraud |
| 18 U.S.C § 1029(b)(2) | Conspiracy to Commit Access Device Fraud |
| 18 U.S.C § 1028A | Aggravated Identity Theft |

This criminal complaint is based on these facts:

See attached affidavit.

☐ Continued on the attached sheet.

_____
Complainant's signature

Amin Lora, Special Agent, USSS
Printed name and title

Sworn to before me and signed in my presence.

Date: Jan 16, 2018

_____
Judge's signature

City and state: Baltimore, Maryland    Stephanie A. Gallagher, U.S. Magistrate Judge
Printed name and title



18-0109SAG

# AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT AND ARREST WARRANT

I, Amin Lora, Special Agent of the United States Secret Service, being duly sworn, hereby declare as follows:

## INTRODUCTION

1. I have been a Special Agent with the United States Secret Service (USSS) since July 2016. I am currently assigned to the Baltimore Field Office where I investigate financial fraud crimes to include credit card fraud, bank fraud, and identity theft. I am a graduate of the Federal Law Enforcement Criminal Investigator Training Program in Glynco, Georgia. Prior to joining the Secret Service as a Special Agent, I was a USSS Uniformed Division Police Officer for 3 years and I was a graduate of the Uniformed Police Officer Training Program at the Federal Law Enforcement Training Center in Glynco, GA. Prior to joining the Secret Service as a Uniformed Police Officer, I was a Police Officer for the city of Atlanta for 2 years. I also hold a bachelor's degree from the University of Rhode Island, with a major in Sociology and a minor in Criminal Justice and Psychology.

2. This Affidavit is made in support of a criminal complaint and arrest warrant for **ILEANA SERDARU** for violations of 18 U.S.C. § 1029(a)(1) (Access Device Fraud), 18 U.S.C. § 1029(b)(2) (Conspiracy to Commit Access Device Fraud), and 18 U.S.C. § 1028A (Aggravated Identity Theft).

3. The information in this Affidavit is based on my personal knowledge, training and experience, and information provided to me by other law enforcement officers and other witnesses, including financial institution fraud investigators. Since this Affidavit is being submitted for the limited purpose of securing a criminal complaint, I have not included each and every fact known to me concerning this investigation. Instead, I have set forth only those facts

necessary to establish probable cause to believe that the following federal criminal statutes have been violated: 18 U.S.C. § 1029(a)(1) (Access Device Fraud), 18 U.S.C. § 1029(b)(2) (Conspiracy to Commit Access Device Fraud), and 18 U.S.C. 1028A (Aggravated Identity Theft).

## ATM SKIMMING SCHEMES

4. Automated teller machines ("ATMs") are electronic devices operated by financial institutions for use by banking customers to conduct banking transactions, such as withdrawing money from accounts. ATMs are located on the premises of financial institutions and other business establishments.

5. A standard ATM requires the user to identify herself or himself as a particular banking customer by inserting into a provided card reader a unique credit or debit card with a magnetic stripe that stores data about the user's bank account. The ATM then requires the cardholder to verify her or his identity by typing a unique personal identification number ("PIN") onto a provided keypad. Once the correct PIN is entered by the user, the ATM provides the user access to the user's bank account, which can include permitting the user to withdraw a specific amount of available funds from the account in the form of United States currency. In this way, credit and debit cards and PINs used at ATMs function as "access devices," as that term is defined in 18 U.S.C. § 1029(e)(1).

6. Many ATMs are connected to interbank networks, which enable a banking customer to withdraw money from an account using an ATM owned and operated by a financial institution other than the financial institution that holds the account.

7. ATM skimming schemes are fraud schemes by which participants in the schemes use devices to capture account information and PINs while individual victims use ATMs, create

2

counterfeit debit or credit cards, and use the counterfeit cards and stolen PINs to obtain cash and other property.

8. An ATM skimming device is a device that surreptitiously records account information from credit or debit cards while such cards are in use at an ATM. Participants in the scheme typically install the device on or over a genuine card reader in such a way as to avoid detection by ATM users. The device is typically used in conjunction with a camera either contained within the device or in a separate device. The camera is focused on the keypad of the ATM and is capable of capturing images of an ATM user's manual entry of her or his PIN.

9. Participants in ATM skimming schemes typically remove the ATM skimming device from the ATM after a period of time. Participants in the scheme then transfer from the device account information recorded from credit or debit cards and match that information with corresponding PINs captured by the camera.

10. A counterfeit credit or debit card can be made by transferring a genuine card's account information to another card with a magnetic stripe through use of a magnetic stripe encoding machine. Participants in the scheme may then use the counterfeit card with the corresponding PIN at an ATM to fraudulently withdraw funds from a compromised bank account or at a business to fraudulently purchase goods and services.

## PROBABLE CAUSE

11. On October 19, 2016, Maryland State Police ("MSP") were contacted by a First United Bank ("First United") Financial Fraud Investigator regarding the attachment of three ATM skimming devices that were attached on three First United ATMs located at the branches in Hagerstown, Maryland; Myersville, Maryland; and Martinsburg, West Virginia. According to First United, approximately 90 customer accounts were compromised and $72,000 was

fraudulently obtained due to these skimming devices. Approximately 80 of the First United victim's accounts were being fraudulently accessed at ATMs operated by M&T Bank located at various locations in the greater Baltimore area.

12. On October 31, 2016, MSP were contacted by a Cedar Point Federal Credit Union ("Cedar Point") fraud investigator regarding ATM skimming devices that were placed on a Cedar Point branch ATM located in Prince Frederick on October 29, 2016 and October 30, 2016, and then retrieved. Video surveillance provided by Cedar Point shows, among other things, an unidentified white male, driving a dark blue Chrysler van with New Jersey temporary tags L814039 tampering with the drive-through ATM.

13. The footage also shows a female later identified as **SERDARU** on October 29, 2016 attaching an ATM skimming device on a Cedar Point ATM. According to Cedar Point, approximately 20 accounts were compromised and $6,500 was fraudulently obtained due to the attachment of this skimming device.

14. Through further investigation, it was discovered that multiple other financial institutions in the area had ATM skimming devices attached to their ATMs during the summer and fall of 2016. These financial institutions include Security Plus Federal Credit Union (SPFCU), The Bank of Southside Virginia (BSSV), and DuPont Community Credit Union (DCCU). A majority of the unauthorized accesses of these compromised accounts also occurred at ATMs operated by M&T Bank within the greater Baltimore area.

15. ATM video and photos provided by SPFCU to investigators show that on both June 20, 2016 and July 1, 2016, **SERDARU** attached an ATM skimmer to a SPFCU ATM at 4470 West Northern Parkway, Baltimore, MD 21215.

16. Additional ATM videos and photos show that on both July 2, 2016 and July 3,

4

2016, **SERDARU** likewise attached an ATM skimming device on an ATM operated by SPFCU at 1514 Woodlawn Drive, Baltimore, MD 21207. According to SPFCU, approximately 111 accounts were compromised and $85,000 was fraudulently obtained due to these skimming devices.

17. Similarly, ATM photographs provided by BSSV to investigators show that on August 27, 2016, **SERDARU** attached an ATM skimming device on an ATM operated by BSSV at 630 County Drive, Wakefield, VA 23888. Furthermore, video provided by BSSV shows **SERDARU** on November 12, 2016 attaching an ATM skimming device at a BSSV ATM located at 764 East Ellerslie Avenue, Colonial Heights, VA 23834. According to BSSV, approximately 50 accounts were compromised and $13,000 was fraudulently obtained due to these skimming devices.

18. ATM video surveillance provided by DCCU to investigators shows that on August 8, 2016, **SERDARU** approached and attached an ATM skimming device on an ATM operated by DCCU at 140 Lucy Lane, Waynesboro, VA 22980. According to DCCU, approximately 100 accounts were compromised and $89,000 was fraudulently obtained due to the attachment of this skimming device.

19. In addition to attaching ATM skimming devices at various banks, as discussed above, **SERDARU** also conducted fraudulent withdrawals from accounts compromised because of ATM skimming devices.

20. For example, on October 15, 2016, **SERDARU** fraudulently withdrew $3,135.00 in cash in 10 separate transactions from nine different First United accounts at an ATM operate by M&T Bank and located at 6417 Petrie Way Road, Rosedale, MD 21237.

21. On June 12, 2017, during a meeting with a confidential source (CS-1), whom

investigators identified by means of ATM surveillance footage as being involved in ATM skimming schemes (including schemes involving **SERDARU**), CS-1 reviewed various ATM surveillance photos each of which showed **SERDARU** attaching an ATM skimming device, as well conducting fraudulent cash withdrawals on accounts compromised as a result of ATM skimming devices. After reviewing the photos, CS-1 provided law enforcement **SERDARU's** name and confirmed that the person in the photos was **SERDARU**.

22. On July 18, 2017, the Secret Service was provided the Alien File ("A File") belonging to an "Ileana Serdaru," by Immigrations and Customs Enforcement ("ICE"). Contained in the A File was a photograph of **SERDARU's** official Romanian passport. Based on a review of the photos, the photo on the passport appears to be same woman who is seen attaching ATM skimming devices in the ATM surveillance photos and videos provided by SPFCU, DCCU, CPFCU and BSSV. It is also the same woman identified by CS-1 as being **SERDARU**.

## CONCLUSION

23. Based on my training and experience as well as the investigative findings described above, I believe there is probable cause to believe that **ILEANA SERDARU** has violated 18 U.S.C. § 1029(a)(1) (Access Device Fraud), 18 U.S.C. § 1029(b)(2) (Conspiracy to Commit Access Device Fraud), and 18 U.S.C. 1028A (Aggravated Identity Theft). I therefore respectfully request that this Court issue a warrant to arrest **ILEANA SERDARU**.

24. I further request that the Court order that all papers in support of this application, including the Affidavit and search warrants, be sealed until further Order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to the target of the investigation. Accordingly, there is good cause to seal these documents because

their premature disclosure may seriously jeopardize that investigation.

Respectfully Submitted,

Amin Lora
Special Agent
U.S. Secret Service

Subscribed and sworn to before me on January 16, 2018:

The Honorable Stephanie A. Gallagher
United States Magistrate Judge
Baltimore, Maryland

7